IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT MICHAEL DAVIS,        )
           )
         Plaintiff,    )
           )
      vs.        )   CASE NO. 2:05-CV-429-MEF
           )
ANTHONY CLARK, et al.,      )
           )
         Defendants,   )

## DEFENDANTS' SPECIAL REPORT AND ANSWER

      Defendants, Millard H. McWhorter, M.D. and Judy Carter (incorrectly designated as Judy Lambert in the complaint) submit their Special Report and Answer to the Court as follows:

## I.    INTRODUCTION

      The plaintiff filed his Complaint on May 9, 2005. The Complaint alleges, presumably, violations of his Eighth Amendment rights. On May 11, 2005, this Court ordered all defendants to submit a Special Report concerning the factual allegations made by the plaintiff in his Complaint.

## II.    PLAINTIFF'S ALLEGATIONS

      The plaintiff appears to be alleging that Dr. McWhorter and Judy Carter ("Nurse Carter") failed to provide adequate or appropriate medical attention in violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment. Specifically, the plaintiff alleges

that Dr. McWhorter and Nurse Carter denied him medical attention in response to a right knee injury

that he allegedly incurred in a county vehicle.[1]

## III.  DEFENDANTS' ANSWER TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by the plaintiff as said allegations are

untrue and completely without basis in law or fact. Defendants deny that they acted, or caused

anyone to act, in such a manner as to deprive the plaintiff of any right to which he was entitled.

Plaintiff's Complaint fails to state a claim upon which relief can be granted. Defendants raise the

defenses of Eleventh Amendment immunity, qualified immunity, plaintiff's failure to comply with

the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the

right to add additional defenses if any further pleading is required or allowed by the law.

## IV.  SWORN STATEMENTS

Pursuant to Paragraph 2 of the Court's Order, Defendants submit the affidavit of Dr.

McWhorter (Exhibit 1), the affidavit of Nurse Carter (Exhibit 2), and the affidavit of Annette Cain

(Exhibit 3), who are persons having knowledge of the subject matter of the Complaint. Defendants

also refer the Court to the affidavits of Sheriff Anthony Clark and Lieutenant Doreen Nelson, which

are attached as Exhibits B and C to said co-defendants' Special Report.

## V.  STATEMENT OF FACTS

A.  <u>Background</u>

1.  Nurse Carter obtained her RN degree from Jefferson Davis State Junior College in

---

[1] This statement of the Plaintiff's Allegations is based upon Plaintiff's Complaint and the undersigned's interpretation of the issues raised. If other issues are presented, Defendant requests that this Honorable Court grant Defendant an opportunity to answer and address those issues.

Brewton, Alabama in 1978. She became licensed by the State of Alabama as an RN in 1978. She

obtained a Bachelor's Degree in psychology in 1992 from Auburn University in Montgomery. From

1978 to 1988, she was employed as an RN at Andalusia Regional Hospital. From April 2005

through June 4, 2005, she was employed by Southern Health Partners, Inc. ("SHP") as the medical

team administrator for the Covington County Jail. Since March 2006, she has been employed by

Andalusia Regional Hospital as an RN. (Carter Aff. at ¶¶ 2-3)

    2.    Dr. McWhorter has been licensed to practice medicine in the state of Alabama since

1986. From January 1994 to July 1999, he was the medical director for the Central State Prison in

Macon, Georgia. From October 1999 to July 2001, he was the medical director for Fountain/Holman

Correctional Facilities in Atmore, Alabama. From February 2002 to the present, he has been

employed by SHP as the medical director of the Covington County Jail in Andalusia, Alabama.

(McWhorter Aff. at ¶¶ 2-3.)

    3.    Annette Cain ("Nurse Cain") has been licensed by the State of Alabama as an

LPN since 1982. From September 2005 to the present, she has been employed as an LPN for

Southern Health Partners, Inc. ("SHP") at the Covington County Jail in Andalusia, Alabama. In late

November 2005, she became medical team administrator for SHP. (Cain Aff. at ¶¶ 2-3.)

    4.    SHP provides medical care to inmates in various jail facilities, including the

Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County

Jail, health care services have been provided to the inmates by SHP pursuant to a contract between

SHP and the Covington County Commission. Health care in the jail is provided under the direction

of a medical team administrator as well as a medical director. During the period complained of by

the plaintiff in this action, Dr. McWhorter was the medical director in the jail and Nurse Carter was the medical team administrator. (McWhorter Aff. at ¶ 4.)

5.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit. (McWhorter Aff. at ¶ 5.)

B.      Chronology of the plaintiff's treatment

6.      A true and correct copy of SHP's medical chart on the plaintiff for his confinement at the Covington County Jail from April 9, 2005 through September 16, 2005 is attached to Nurse Cain's affidavit as Exhibit A. (Cain Aff. at ¶ 6.)

7.      On April 9, 2005, the plaintiff was booked into the Covington County Jail. (McWhorter Aff. At ¶ 8.)

8.      On April 17, 2005, the plaintiff completed a sick call slip complaining that he needed an inhaler for asthma and that he had had recent knee surgery and needed pain medication. He also complained that he was having trouble sleeping and not getting enough food. In response, Nurse Carter saw the plaintiff, assessing him with a history of asthma but having no trouble during her visit. Pursuant to Dr. McWhorter's verbal order, the plaintiff was prescribed Albuterol as needed for his asthmatic complaints and Naproxin as needed for his pain. (McWhorter Aff. at ¶ 9.)

9.      On April 22, 2005, the plaintiff completed a sick call slip, complaining that he had allegedly fallen off the Sheriff's van and twisted his knee. On the same day, he was seen by Patsy Colvin, LPN ("Nurse Colvin"), who noted that the plaintiff refused medication for pain to his right

4

upper leg. She observed some swelling to the back of his right leg just above the knee. She then

noted that she would arrange for an x-ray. (McWhorter Aff. at ¶ 10.)

10.    On April 24, 2005, the plaintiff completed a sick call slip, complaining that he had

pulled or torn something in his right knee and could not walk on it or straighten it. Thereafter, the

plaintiff was seen by Nurse Carter who rechecked the right knee and instructed the plaintiff to take

his Naproxin. Plaintiff was complaining of some indigestion, so Dr. McWhorter verbally ordered

that the plaintiff receive Zantac for same. Nurse Carter noted that the plaintiff would be seen by Dr.

McWhorter. (McWhorter Aff. at ¶ 11.)

11.    On April 27, 2005, Dr. McWhorter saw the plaintiff, and he complained of right knee

pain. Dr. McWhorter ordered that the plaintiff receive an x-ray and for him to start Desyrel to help

him sleep. On April 28, 2005, the plaintiff's right knee was x-rayed. Dr. T.L. Eakes found that the

plaintiff had a chip to his patella region, which Dr. Eakes opined was probably old. Other than this

finding, the x-ray was negative. Dr. Eakes ordered that the plaintiff use a knee brace to help with

his pain. (McWhorter Aff. at ¶ 12.)

12.    On May 5, 2005, the plaintiff was seen by Connie Lyons, LPN, ("Nurse Lyons") who

noted that the plaintiff had returned his right knee brace, stating that it kept sliding down and that

it was not helping. The plaintiff asked to be seen by Dr. McWhorter. (McWhorter Aff. at ¶ 13.)

13.    On May 11, 2005, Dr. McWhorter saw the plaintiff and recommended that he use an

ace bandage as opposed to the knee brace. Dr. McWhorter also prescribed Percogesic for the

plaintiff's complaints of pain. (McWhorter Aff. at ¶ 14.)

14.    On May 18, 2005, the plaintiff was seen by Nurse Lyons, and the plaintiff complained of knee pain. Nurse Lyons noted that an MRI had been ordered. (McWhorter Aff. at ¶ 15.)

15.    On May 25, 2005, the plaintiff underwent an MRI on his right knee. He was seen by Drs. Hunter Nelson, M.D. and Bernard A. Landry, M.D. The MRI demonstrated that the plaintiff had suffered an ACL tear to his right knee and a torn posterior horn of the medial meniscus. (McWhorter Aff. at ¶ 16.)

16.    On June 1, 2005, the jail medical staff received the results from the MRI and the plaintiff was referred to see an orthopaedist, Dr. Landon Anderson. (McWhorter Aff. at ¶ 17.)

17.    On June 7, 2005, Dr. Anderson saw the plaintiff. Dr. Anderson noted that the plaintiff could probably appropriately be treated with physical therapy and anti-inflammatory medications, but the plaintiff informed Dr. Anderson that he had a lawsuit pending and that he wanted the ACL tear "fixed." Dr. Anderson informed the plaintiff that he did not do cruciate reconstructions and that, for surgery, he needed to be referred to another orthopaedist. Dr. Anderson made no alterations to the plaintiff's treatment other than recommending that the plaintiff's knee not be wrapped with an ace bandage. (McWhorter Aff. at ¶ 18.)

18.    Nurse Lyons entered a note regarding the plaintiff's visit to Dr. Anderson's office on June 7, 2005, stating that Dr. Anderson's office would try to schedule the plaintiff for ACL surgery with another orthopaedic surgeon. (McWhorter Aff. at ¶ 19.)

19.    On June 3, 2005, the plaintiff completed a sick call slip, complaining that his leg had a burning sensation and severe pain and that his medication was not strong enough. Later that day,

the plaintiff was seen by Nurse Lyons, and pursuant to Dr. McWhorter's order, the plaintiff was prescribed Darvocet and Ibuprofen for his pain. (McWhorter Aff. at ¶ 20.)

20.    On June 6, 2005, the plaintiff completed a sick call slip complaining of back spasms. Nurse Lyons saw the plaintiff on June 7, 2005, and noted that the Darvocet had been discharged and that Dr. McWhorter had ordered Robaxin to take its place. (McWhorter Aff. at ¶ 21.)

21.    On June 7, 2005, the plaintiff completed a sick call slip, complaining that his medications for pain were not working. On June 8, 2005, Nurse Lyons saw the plaintiff and noted that the plaintiff would continue on Robaxin. Plaintiff also related to Nurse Lyons his history of knee problems due to playing athletics. (McWhorter Aff. at ¶ 22.)

22.    On June 13, 2005, the plaintiff completed a sick call slip, stating that he was having trouble moving around and that his right leg hurt when he put weight on it. He complained that his medication was not working. On the same day, the plaintiff was seen by Nurse Colvin, who noted that the plaintiff was on medications for these conditions and had been seen by Dr. McWhorter for same. Nurse Colvin also referred the plaintiff to see Dr. McWhorter. (McWhorter Aff. at ¶ 23.)

23.    On June 15, 2005, Dr. McWhorter saw the plaintiff and entered new orders for Percogesic for the plaintiff's pain. (McWhorter Aff. at ¶ 24.)

24.    On June 20, 2005, the plaintiff completed a sick call slip complaining that he had not received his ACL surgery yet and that his leg was getting worse. On the same day, Nurse Lyons saw the plaintiff and referred him to see Dr. McWhorter. (McWhorter Aff. at ¶ 25.)

25.    On June 22, 2005, Dr. McWhorter saw the plaintiff and entered an order for Robaxin 750 mg by mouth twice a day for 15 days and as needed for his right knee pain. (McWhorter Aff. at ¶ 26.)

26.     On June 27, 2005, the plaintiff completed an inmate sick call slip, complaining of problems with his right leg.  Nurse Lyons saw the plaintiff and informed the plaintiff that an appointment had been scheduled for the plaintiff's right knee surgery, but she could not inform the plaintiff of the date for security reasons.  She also noted that Robaxin would be administered to the plaintiff as needed per Dr. McWhorter's order for the plaintiff's pain.  (McWhorter Aff. at ¶ 27.)

27.     On July 6, 2005, the plaintiff complained that he had still not had surgery on his knee. Dr. McWhorter saw the plaintiff later that day.  Dr. McWhorter assessed the plaintiff with knee strain and insomnia and ordered that Robaxin 750 mg. be restarted and that the plaintiff receive Trazodone for his insomnia.  (McWhorter Aff. at ¶ 28.)

28.     On August 3, 2005, Dr. McWhorter saw the plaintiff.  The plaintiff had apparently been refusing his medication for knee pain and indicated that he wanted to resume these medications. Dr. McWhorter then ordered the plaintiff to receive Robaxin and Ibuprofen for his pain. (McWhorter Aff. at ¶ 29.)

29.     On August 5, 2005, Nurse Donna Cooey noted that the plaintiff was refusing all of his medications.  (McWhorter Aff. at ¶ 30.)

30.     On August 17, 2005, Dr. McWhorter saw the plaintiff for complaints of a stomach ache related to taking Ibuprofen.  Dr. McWhorter changed the plaintiff's Ibuprofen prescription to Percogesic and discharged his Robaxin.  (McWhorter Aff. at ¶ 31.)

31.     On August 29, 2005, the plaintiff was transferred to Andalusia Regional Hospital for surgery on his right knee.  Surgery on the plaintiff's right ACL was performed by Dr. Holland. (McWhorter Aff. at ¶ 32.)

32.    On September 1, 2005, the plaintiff returned to the Covington County Jail with a large wrap on his right knee. He returned walking with a walker, with orders for physical therapy three times a week. (McWhorter Aff. at ¶ 33.)

33.    Upon the plaintiff's return to the jail, Dr. McWhorter assessed the plaintiff as status post right knee surgery and ordered that he receive Percogesic and Robaxin for pain and that he continue rehabilitation as per the orders of Dr. Holland. (McWhorter Aff. at ¶ 34.)

34.    On September 12, 2005, Nurse Donna Cooey noted that the plaintiff was refusing to go to rehab. (McWhorter Aff. at ¶ 35.)

35.    On September 16, 2005, the plaintiff was discharged from the Covington County Jail. (McWhorter Aff. at ¶ 36.)

C.    The plaintiff was not denied medical care.

36.    All of the plaintiff's complaints with regard to his right knee were treated timely, appropriately and within the standard of care. On no occasion was the plaintiff ever at risk of serious harm, nor was Dr. McWhorter, Judy Carter or any member of the medical staff ever indifferent to any complaint that he made. Plaintiff received an x-ray and later an MRI on his right knee. He was seen by two orthopaedic doctors and underwent ACL surgery performed by Dr. Holland in late August, 2005. His ACL surgery was not an emergency surgery. The plaintiff incurred no problems as a result of any delay in the scheduling of said surgery. The surgery was scheduled as quickly as it could be scheduled in lieu of Dr. Holland's calendar. (McWhorter Aff. at ¶ 37; Carter Aff. at ¶¶ 21-22.)

D.    The plaintiff failed to exhaust administrative remedies.

37.    At the time of the plaintiff's incarceration, the Covington County Jail had an inmate grievance procedure. (Clark Aff. at ¶ 4.) Grievances were required to be in writing and could be filed with any member of the jail staff. (*Id.*) Copies of grievance forms are kept in the inmate's jail file. (*Id.*) Jail policy provided an exception that allowed emergency grievances to be made orally. (*Id.*) It was a violation of jail policy to deny an inmate access to the grievance procedure. (*Id.*. at ¶ 6.) The plaintiff was aware of the grievance procedure. (*Id.* at ¶ 5.) The plaintiff never filed a grievance related to any of his claims prior to filing his complaint. (*Id.* at 7.)

## VI.    LEGAL ARGUMENT

A.    The Plaintiff's Claims are Barred by the Prison Litigation Reform Act for His Failure to Exhaust Administrative Remedies.

The Prison Litigation Reform Act requires exhaustion of all available administrative remedies before an inmate may file a lawsuit under 42 U.S.C. § 1983. See 42 U.S.C. § 1997e(a); *Booth v. Churner,* 532 U.S. 731, 733-34 (2001) (stating that 42 U.S.C. § 1997e(a) "requires a prisoner to exhaust 'such administrative remedies as are available' before suing over prison conditions."). Exhaustion is required for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle,* 534 U.S. 516, 532 (2002). The plaintiff in this case has failed to utilize two separate and distinct administrative remedies available to him. As a result, his claims are barred.

First, the plaintiff failed to properly utilize the grievance procedures provided at the local level in the Covington County Jail to address his claims prior to the filing of this lawsuit. The

Covington County Jail had a grievance procedure. (Clark Aff. at 4.) The plaintiff never filed a grievance related to any of his claims. (Clark Aff. at ¶ 7.)

Second, the plaintiff has not alleged that he pursued any grievance through the State Board of Adjustment. See *Brown v. Tombs,* 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies). Alabama law provides the opportunity to file a claim and proceed before the Alabama State Board of Adjustment pursuant to Ala. Code § 41-9-60 et seq.

Because the State provides an administrative remedy that the plaintiff failed to exhaust and the plaintiff failed to exhaust the Covington County Jail grievance procedure, the plaintiff's claims are barred by 42 U.S.C. § 1997e(a). See *Alexander v. Hawk,* 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of present action due to failure to exhaust administrative remedies).

B.   The Plaintiff's Claims Against These Defendants Are Due To Be Dismissed, Because Plaintiff Has Presented No Evidence That Dr. McWhorter and Nurse Carter Were Deliberately Indifferent to a Serious Medical Condition.

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Dr. McWhorter and Nurse Carter were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian,* 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks,* 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005). Where a prisoner has received medical attention and the dispute concerns the

adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985).

Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." *(Id.* at 105-06.)  Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. *(Id.* at 104.)

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added).  Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.").

In this case, there is absolutely no evidence from which a jury could find that Dr. McWhorter and Nurse Carter acted with deliberate indifference to any serious medical need of the plaintiff. The plaintiff alleges that he did not receive adequate medical attention for an injury to his right knee. Yet, Plaintiff received an x-ray and later an MRI on his right knee. He was seen by two orthopaedic doctors and underwent ACL surgery performed by Dr. Holland in late August, 2005. His ACL surgery was not an emergency surgery, and the plaintiff incurred no problems as a result of any delay in the scheduling of said surgery. (McWhorter Aff. at ¶ 37.) The plaintiff's chart reflects that each of his sick call slips was responded to in a timely manner, and that the plaintiff received medication for his complaints of pain. Nurse Carter and Dr. McWhorter have testified that all necessary care provided to the plaintiff was appropriate, timely and within the standard of care and that on no occasion was the plaintiff ever at risk of serious harm, nor was Nurse Carter, Dr. McWhorter or any member of the medical staff ever indifferent to any complaint that the plaintiff made. (Carter Aff. at ¶¶ 21-22; McWhorter Aff. at ¶ 37.) Because the plaintiff has offered no evidence to the contrary, Dr. McWhorter and Nurse Carter are entitled to summary judgment as a matter of law.

## VII.   REQUEST THAT SPECIAL REPORT BE TREATED AS MOTION FOR SUMMARY JUDGMENT.

### A.    Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants moves this Court to enter summary judgment in their favor, because, as is more particularly shown above, there is no genuine issue as to any material fact and they are entitled to judgment as a matter of law.

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant,  However, a plaintiff "must do more than show that there is some

13

metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000). "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'" *Reeves,* 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299. "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'" *Marsh v. Butler County,* 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (*en banc*) quoting *Massachusetts School of Law v. American Bar,* 142 F.3d 26, 40 (1st Cir. 1998).

B.    <u>Motion for Summary Judgment</u>

Defendants respectfully request that this honorable Court treat this Special Report as a motion for summary judgment and grant unto them the same.

_Robert N. Bailey_

Daniel F. Beasley
Robert N. Bailey, II
Attorneys for Defendants, Millard H. McWhorter, M.D. and Judy Carter

LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100

## CERTIFICATE OF SERVICE

I hereby certify that on this the 24 day of August, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Scott W. Gosnell, Esq.
> Webb and Eley
> P.O. Box 240909
> Montgomery , AL  36124-0909

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document  to the following non-CM/ECF participant:

> Robert Michael Davis
> 500 Hardin Street
> Opp, Alabama 36467

_____
Of Counsel

15

# EXHIBIT 1

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT MICHAEL DAVIS,       )
                                  )
                 Plaintiff,    )
                                  )
           vs.               )     CASE NO. 2:05-CV-429-MEF
                                  )
ANTHONY CLARK, et al.,      )
                                  )
               Defendants,   )

## <u>AFFIDAVIT OF MILLARD H. McWHORTER, M.D.</u>

Before me, the undersigned notary public, in and for said County and State, personally appeared **Millard H. McWhorter, M.D.**, who, after first being duly sworn by me, deposes and states as follows:

1.     My name is Millard H. McWhorter, M.D. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2.     I obtained my medical degree from Meharry Medical College in Nashville, Tennessee in 1981. From 1981 to 1984, I performed a residency at Morehouse Family Practice Program at Southwest Community Hospital in Atlanta, Georgia. From January 1985 to May 1986, I was in private practice in Monticello, Georgia. From June 1986 to September 1992, I was the medical director at Red Level Medical Clinic in Red Level, Alabama. During this same time frame, I was also a consultant to the Community Mental Health First Step Clinic for Alcohol and Drug Abuse in Red Level, Alabama. From September 1987 to April 1989, I was the chief of staff and medical director at Columbia Regional Medical Center in Andalusia, Alabama. From January 1989 to

December 1992, I was a physician for Spectrum Emergency Services, where I worked in emergency rooms in Georgia and Alabama. From October 1992 to December 1993, I was a staff physician for the Davis Medical Group in Huntsville, Alabama. From January 1994 to July 1999, I was the medical director for the Central State Prison in Macon, Georgia. From October 1999 to July 2001, I was the medical director for Fountain/Holman Correctional Facilities in Atmore, Alabama. From February 2002 to the present, I have been employed by Southern Health Partners, Inc. ("SHP") as the medical director of the Covington County Jail in Andalusia, Alabama, and I have also been in private practice in Andalusia, Alabama.

3.     I am licensed to practice medicine in the State of Alabama and have been so since 1986. I am also licensed to practice medicine in the states of Georgia and Tennessee.

4.     SHP provides medical care to inmates in various jail facilities, including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, I was the medical director in the jail and Judy Carter was the medical team administrator.

5.     When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

6.      As I understand the plaintiff's complaint in this case, the plaintiff alleges that Judy

Carter and myself denied him medical attention in response to a right knee injury that he allegedly

incurred in a county vehicle.

7.      I have reviewed SHP's medical chart concerning the plaintiff.

8.      On April 9, 2005, the plaintiff was booked into the Covington County Jail.

9.      On April 17, 2005, the plaintiff completed a sick call slip complaining that he needed

an inhaler for asthma and that he had had recent knee surgery and needed pain medication. He also

complained that he was having trouble sleeping and not getting enough food. In response, Judy

Carter, MTA ("Nurse Carter") saw the plaintiff, assessing him with a history of asthma but having

no trouble during her visit. Pursuant to my verbal order, the plaintiff was prescribed Albuterol as

needed for his asthmatic complaints and Naproxin as needed for his pain.

10.      On April 22, 2005, the plaintiff completed a sick call slip, complaining that he had

allegedly fallen off the Sheriff's van and twisted his knee. On the same day, he was seen by Patsy

Colvin, LPN ("Nurse Colvin"), who noted that the plaintiff refused medication for pain to his right

upper leg. She observed some swelling to the back of his right leg just above the knee. She then

noted that she would arrange for an x-ray.

11.      On April 24, 2005, the plaintiff completed a sick call slip, complaining that he had

pulled or torn something in his right knee and could not walk on it or straighten it. Thereafter, the

plaintiff was seen by Nurse Carter who rechecked the right knee and instructed the plaintiff to take

his Naproxin. Plaintiff was complaining of some indigestion, so I verbally ordered that the plaintiff

received Zantac for same. Nurse Carter noted that the plaintiff would be seen by me.

12.      On April 27, 2005, I saw the plaintiff, and he complained of right knee pain. I

ordered that he receive an x-ray and for him to start Desyrel to help him sleep. On April 28, 2005,

the plaintiff's right knee was x-rayed. Dr. T.L. Eakes found that the plaintiff had a chip to his patella region, which Dr. Eakes opined was probably old. Other than this finding, the x-ray was negative. Dr. Eakes ordered that the plaintiff use a knee brace to help with his pain.

13.    On May 5, 2005, the plaintiff was seen by Connie Lyons, LPN, ("Nurse Lyons") who noted that the plaintiff had returned his right knee brace, stating that it kept sliding down and that it was not helping. The plaintiff asked to be seen by me.

14.    On May 11, 2005, I saw the plaintiff and recommended that he use an ace bandage as opposed to the knee brace. I also prescribed Percogesic for the plaintiff's complaints of pain.

15.    On May 18, 2005, the plaintiff was seen by Nurse Lyons, and the plaintiff complained of knee pain. Nurse Lyons noted that an MRI had been ordered.

16.    On May 25, 2005, the plaintiff underwent an MRI on his right knee. He was seen by Drs. Hunter Nelson, M.D. and Bernard A. Landry, M.D. The MRI demonstrated that the plaintiff had suffered an ACL tear to his right knee and a torn posterior horn of the medial meniscus.

17.    On June 1, 2005, we received the results from the MRI and the plaintiff was referred to see an orthopaedist, Dr. Landon Anderson.

18.    On June 7, 2005, Dr. Anderson saw the plaintiff. Dr. Anderson noted that the plaintiff could probably appropriately be treated with physical therapy and anti-inflammatory medications, but the plaintiff informed Dr. Anderson that he had a lawsuit pending and that he wanted the ACL tear "fixed." Dr. Anderson informed the plaintiff that he did not do cruciate reconstructions and that, for surgery, he needed to be referred to another orthopaedist. Dr. Anderson made no alterations to the plaintiff's treatment other than recommending that the plaintiff's knee not be wrapped with an ace bandage.

19.    Nurse Lyons entered a note regarding the plaintiff's visit to Dr. Anderson's office on June 7, 2005, stating that Dr. Anderson's office would try to schedule the plaintiff for ACL surgery with another orthopaedic surgeon.

20.    On June 3, 2005, the plaintiff completed a sick call slip, complaining that his leg had a burning sensation and severe pain and that his medication was not strong enough. Later that day, the plaintiff was seen by Nurse Lyons, and pursuant to my order, the plaintiff was prescribed Darvocet and Ibuprofen for his pain.

21.    On June 6, 2005, the plaintiff completed a sick call slip complaining of back spasms. Nurse Lyons saw the plaintiff on June 7, 2005, and noted that the Darvocet had been discharged and that I had ordered Robaxin to take its place.

22.    On June 7, 2005, the plaintiff completed a sick call slip, complaining that his medications for pain were not working. On June 8, 2005, Nurse Lyons saw the plaintiff and noted that the plaintiff would continue on Robaxin. Plaintiff also related to Nurse Lyons his history of knee problems due to playing athletics.

23.    On June 13, 2005, the plaintiff completed a sick call slip, stating that he was having trouble moving around and that his right leg hurt when he put weight on it. He complained that his medication was not working. On the same day, the plaintiff was seen by Nurse Colvin, who noted that the plaintiff was on medications for these conditions and had been seen by me for same. She also referred the plaintiff to see me.

24.    On June 15, 2005, I saw the plaintiff and entered new orders for Percogesic for the plaintiff's pain.

25.    On June 20, 2005, the plaintiff completed a sick call slip complaining that he had not received his ACL surgery yet and that his leg was getting worse. On the same day, Nurse Lyons saw the plaintiff and referred him to see me.

26.    On June 22, 2005, I saw the plaintiff and entered an order for Robaxin 750 mg by mouth twice a day for 15 days and as needed for his right knee pain.

27.    On June 27, 2005, the plaintiff completed an inmate sick call slip, complaining of problems with his right leg. Nurse Lyons saw the plaintiff and informed the plaintiff that an appointment had been scheduled for the plaintiff's right knee surgery, but she could not inform the plaintiff of the date for security reasons. She also noted that Robaxin would be administered to the plaintiff as needed per my order for the plaintiff's pain.

28.    On July 6, 2005, the plaintiff complained that he had still not had surgery on his knee. I saw the plaintiff later that day. I assessed the plaintiff with knee strain and insomnia and ordered that Robaxin 750 mg. be restarted and that the plaintiff receive Trazodone for his insomnia.

29.    On August 3, 2005, I saw the plaintiff. The plaintiff had apparently been refusing his medication for knee pain and indicated that he wanted to resume these medications. I then ordered the plaintiff to receive Robaxin and Ibuprofen for his pain.

30.    On August 5, 2005, Nurse Donna Cooey noted that the plaintiff was refusing all of his medications.

31.    On August 17, 2005, I saw the plaintiff for complaints of a stomach ache related to taking Ibuprofen. I changed the plaintiff's Ibuprofen prescription to Percogesic and discharged his Robaxin.

32.    On August 29, 2005, the plaintiff was transferred to Andalusia Regional Hospital for surgery on his right knee. Surgery on the plaintiff's right ACL was performed by Dr. Holland.

33.     On September 1, 2005, the plaintiff returned to the Covington County Jail with a large wrap on his right knee. He returned walking with a walker, with orders for physical therapy three times a week.

34.     Upon the plaintiff's return to the jail, I assessed the plaintiff as status post right knee surgery and ordered that he receive Percogesic and Robaxin for pain and that he continue rehabilitation as per the orders of Dr. Holland.

35.     On September 12, 2005, Nurse Donna Cooey noted that the plaintiff was refusing to go to rehab.

36.     On September 16, 2005, the plaintiff was discharged from the Covington County Jail.

37.     All of the plaintiff's complaints with regard to his right knee were treated timely, appropriately and within the standard of care. On no occasion was the plaintiff ever at risk of serious harm, nor was I, Judy Carter or any member of the medical staff ever indifferent to any complaint that he made. Plaintiff received an x-ray and later an MRI on his right knee. He was seen by two orthopaedic doctors and underwent ACL surgery performed by Dr. Holland in late August, 2005. His ACL surgery was not an emergency surgery. The plaintiff incurred no problems as a result of any delay in the scheduling of said surgery. The surgery was scheduled as quickly as it could be scheduled in lieu of Dr. Holland's calendar.

Millard H. McWhorter, M.D.

STATE OF ALABAMA        )
                                            )
COUNTY OF _Covington_ )


    I, the undersigned Notary Public in and for said county in said state, hereby certify that Millard H. McWhorter, M.D., whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.  August dd, d007

_____
Notary Public
My commission expires: _1d-3-d007_

# EXHIBIT 2

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT MICHAEL DAVIS,                    )
                                         )
                    Plaintiff,           )
                                         )
          vs.                            )      CASE NO. 2:05-CV-429-MEF
                                         )
ANTHONY CLARK, et al.,                   )
                                         )
                    Defendants,          )

## AFFIDAVIT OF JUDY CARTER

Before me, the undersigned authority, personally appeared Judy Carter and, after being duly

sworn, deposed and said as follow:

1.      My name is Judy Carter. I am over the age of 19 years and have personal knowledge

of all matters set out herein.

2.      I am a registered nurse. I obtained my RN degree from Jefferson Davis State Junior

College in Brewton, Alabama in 1978. I became licensed by the State of Alabama as an RN in 1978.

I obtained a Bachelor's Degree in psychology in 1992 from Auburn University in Montgomery.

3.      From 1978 to 1988, I was employed as an RN at Andalusia Regional Hospital. From

April 2005 through June 4, 2005, I was employed by Southern Health Partners, Inc. ("SHP") as the

medical team administrator for the Covington County Jail. Since March 2006, I have been employed

by Andalusia Regional Hospital as an RN.

4.      SHP provides medical care to inmates in various jail facilities including the

Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County

Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, the medical director in the jail was Dr. Millard McWhorter and I was the medical team administrator.

5.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

6.      As I understand the plaintiff's complaint in this case, the plaintiff alleges that I and Dr. McWhorter denied him medical attention in response to a right knee injury that he allegedly incurred in a county vehicle.

7.      I have reviewed SHP's medical chart concerning the plaintiff.

8.      On April 9, 2005, the plaintiff was booked into the Covington County Jail.

9.      On April 17, 2005, the plaintiff completed a sick call slip complaining that he needed an inhaler for asthma and that he had had recent knee surgery and needed pain medication. He also complained that he was having trouble sleeping and not getting enough food. In response, I saw the plaintiff, assessing him with a history of asthma but having no trouble during my visit. Pursuant to Dr. McWhorter's verbal order, the plaintiff was prescribed Albuterol as needed for his asthmatic complaints and Naproxin as needed for his pain.

10.     On April 22, 2005, the plaintiff completed a sick call slip, complaining that he had allegedly fallen off the Sheriff's van and twisted his knee. On the same day, he was seen by Patsy Colvin, LPN ("Nurse Colvin"), who noted that the plaintiff refused medication for pain to his right

upper leg. She observed some swelling to the back of his right leg just above the knee. She then noted that she would arrange for an x-ray.

11.    On April 24, 2005, the plaintiff completed a sick call slip, complaining that he had pulled or torn something in his right knee and could not walk on it or straighten it. Thereafter, the plaintiff was seen by me, and I rechecked the right knee and instructed the plaintiff to take his Naproxin. Plaintiff was complaining of some indigestion, so Dr. McWhorter verbally ordered that the plaintiff received Zantac for same. I noted that the plaintiff would be seen by Dr. McWhorter.

12.    On April 27, 2005, Dr. McWhorter saw the plaintiff, and the plaintiff complained of right knee pain. Dr. McWhorter ordered that the plaintiff receive an x-ray and for him to start Desyrel to help him sleep. On April 28, 2005, the plaintiff's right knee was x-rayed. Dr. T.L. Eakes found that the plaintiff had a chip to his patella region, which Dr. Eakes opined was probably old. Other than this finding, the x-ray was negative. Dr. Eakes ordered that the plaintiff use a knee brace to help with his pain.

13.    On May 5, 2005, the plaintiff was seen by Connie Lyons, LPN, ("Nurse Lyons") who noted that the plaintiff had returned his right knee brace, stating that it kept sliding down and that it was not helping. The plaintiff asked to be seen by Dr. McWhorter.

14.    On May 11, 2005, Dr. McWhorter saw the plaintiff and recommended that he use an ace bandage as opposed to the knee brace. Dr. McWhorter also prescribed Percogesic for the plaintiff's complaints of pain.

15.    On May 18, 2005, the plaintiff was seen by Nurse Lyons, and the plaintiff complained of knee pain. Nurse Lyons noted that an MRI had been ordered.

16.    On May 25, 2005, the plaintiff underwent an MRI on his right knee. He was seen by Drs. Hunter Nelson, M.D. and Bernard A. Landry, M.D. The MRI demonstrated that the plaintiff had suffered an ACL tear to his right knee and a torn posterior horn of the medial meniscus.

17.    On June 1, 2005, we received the results from the MRI and the plaintiff was referred to see an orthopaedist, Dr. Landon Anderson.

18.    On June 3, 2005, the plaintiff completed a sick call slip, complaining that his leg had a burning sensation and severe pain and that his medication was not strong enough. Later that day, the plaintiff was seen by Nurse Lyons, and pursuant to Dr. McWhorter's order, the plaintiff was prescribed Darvocet and Ibuprofen for his pain.

19.    On June 4, 2005, I was let go by SHP and provided no further treatment to the plaintiff after such date.

20.    All of the information contained herein is based upon my personal knowledge and the plaintiff's medical chart.

21.    All necessary care provided to the plaintiff by me was appropriate, timely and within the standard of care.

22.    On no occasion was the plaintiff ever at risk of serious harm, nor was I ever indifferent to any complaint that he made.

_Judy Carter_

Judy Carter

STATE OF ALABAMA     )
                     )
COUNTY OF _Covington_ )


    I, the undersigned Notary Public in and for said county in said state, hereby certify that Judy Carter, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on ~~the day the same bears~~ date.  _August 22, 2007  RWB_

_Robert W. Baty_

Notary Public
My commission expires: _10-3-2007_

# EXHIBIT 3

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT MICHAEL DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NO. 2:05-CV-429-MEF |
| | ) | |
| ANTHONY CLARK, et al., | ) | |
| | ) | |
| Defendants, | ) | |

## AFFIDAVIT OF ANNETTE CAIN, L.P.N.

Before me, the undersigned notary public, in and for said County and State, personally appeared **Annette Cain, L.P.N.**, who, after first being duly sworn by me, deposes and states as follows:

1.     My name is Annette Cain, L.P.N. I am over the age of 19 years and have personal knowledge of the facts contained herein.

2.     I am a licensed practical nurse. I obtained my L.P.N. degree in 1982 from McArthur State College in Opp, Alabama, and became licensed by the State of Alabama as an L.P.N. in 1982. From 1982 to 1985, I worked as an L.P.N. on the emergency room and surgery departments of Columbia General Hospital in Andalusia, Alabama. From 1985 to 1986, I worked as an L.P.N. for Dr. Joseph Herrod in Enterprise, Alabama, where my nursing care focused on behavioral malfunction. From 1986 to 1988, I was an L.P.N. at Opp nursing facility. From 1988 to 1990, I was an L.P.N. for Dr. Steven Price in Opp, Alabama, who had a private surgery practice. From 1990 to 1992, I was an L.P.N. at Oxford Home Health Care in Oxford, Alabama. From 1992 to 2005, I was an L.P.N. at Andalusia Manor Nursing Home.

3.      From September 2005 to the present, I have been employed as an L.P.N. for Southern Health Partners, Inc. ("SHP") at the Covington County Jail in Andalusia, Alabama. In late November 2005, I became medical team administrator.

4.      SHP provides medical care to inmates in various jail facilities including the Covington County Jail. During the entire time of plaintiff's incarceration in the Covington County Jail, health care services have been provided to the inmates by SHP pursuant to a contract between SHP and the Covington County Commission. Health care in the jail is provided under the direction of a medical team administrator as well as a medical director. During the period complained of by the plaintiff in this action, the medical director in the jail was Dr. Millard McWhorter and Judy Carter was the medical team administrator.

5.      When an inmate in the jail requires routine medical care, he or she obtains an inmate sick call slip from the corrections officer on duty in the housing unit and that form is provided to the medical staff for action. Routine sick calls are conducted by the medical staff inside the housing unit.

6.      A true and correct copy of SHP's medical chart on plaintiff Robert Davis for his confinement at the Covington County Jail from April 9, 2005 through September 16, 2005 is attached hereto as Exhibit A.

_Annette Cain_ (signature)

_____

Annette Cain


STATE OF ALABAMA        )

COUNTY OF _Covington_   )


    I, the undersigned Notary Public in and for said county in said state, hereby certify that Annette Cain, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on the ~~day the same bears~~ date. _RWB_

_August 22, 2007_


_Robert W. Baty_ (signature)

_____

Notary Public

My commission expires: _10-3-2007_

# EXHIBIT A



**SOUTHERN HEALTH PARTNERS**

*A*

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility

Today's Date: 4/17/05   Pod/Location: A   Cell: ____   ID# ____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: Asthma need inhaler - Recent knee surgery last yr. need pain med. Cant sleep, Also not getting enough feed keep having headaches

How long have you had this problem? 2 wks

Inmate's Signature: Robert M Davis   Date: 4/17/05

* * * * * * * * * *

## TO BE COMPLETED BY MEDICAL STAFF:

**NKA**

Note Patient's Vital Signs: Temp 97.8 Resp 16 Pulse 72 B/P 137/88

Instructions/Assessment: Document your findings, Inmate's responses/actions

Will See  Hx of asthma - no trouble today - uses as needed - usually when "hot" Lungs clear, no wheezing noted - Albuterol Inhaler PRN VO Dr McWhorter

Knee surgery - still has pain Naproxen 500 BID PRN  VO Dr McWhorter

Obese - Knee Complaint

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again ____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: ____   Seen by: ____

*Place original form in patient's medical record*



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 4-22-05    Pod/Location: A    Cell: _____    ID# _____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: Fall off sheriff van twistrn knee severe pain

How long have you had this problem? One nite

Inmate's Signature: Robert M Davis    Date: 4-22-05

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp 97⁶    Resp 22    Pulse 76    B/P 176/110

Instructions/Assessment: Document your findings, inmate's responses/actions _Refers medication fee prev to (R) ① lg. Some swelling noted @ knee + back of leg just above knee. Will arrange for X-Ray_

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required?  If checked, date to be seen again_____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 4-22-05    Seen by: _____

*Place original form in patient's medical record.*



SOUTHERN
HEALTH
PARTNERS

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 4-24-05     Pod/Location: A     Cell: _____ ID# _____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: I pulled or tear something in my right knee
still cant walk on it or straightin leg, still has swelling
I have been having severe pain all week was denien meds on fri.
And medical attendic job to wait until monday

How long have you had this problem? Thursday nite 4 Days 3 nites

Inmate's Signature: Robert M Davis          Date: 4-24-05

＊＊＊＊＊＊＊＊＊＊ ＊＊＊＊＊＊＊＊＊ ＊＊＊＊＊＊＊＊＊＊ ＊＊＊＊＊＊＊＊＊ ＊＊＊＊＊＊＊＊＊＊ ＊＊＊＊＊＊＊＊＊

# TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:   Temp 97⁴  Resp 20  Pulse 73  B/P 138/86

Instructions/Assessment: Document your findings, inmate's responses/actions _____

Recheck ® knee - instructed
to take Naproxen - , to see
MD -    also some indigestion
Zantac po Bid x 7 days
UO Dr McWhorter/go center

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: _____     Seen by: _____

*Place original form in patient's medical record.*

*(handwritten left margin, rotated):* Temp was up Aug 16 + press on FHI Att. Nurse

 **SOUTHERN HEALTH PARTNERS**

## INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 06-03-05   Pod/Location: A   Cell: \_\_\_\_   ID# \_\_\_\_

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: My leg has a burning sensation and severe pain my current medicine is no longer effective. I need something stronger PLEASE!! Also notify Dr. McWhorter I need to see him ASAP

How long have you had this problem? 1 week current symptoms

Inmate's Signature: Robert M Davis     Date: 06-03-05

•••••••••••• •••••••••• ••••••••• ••••••••• ••••••••• •••••••• •••••••••

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs: Temp 96.4 Resp\_\_\_\_\_ Pulse 114 B/P\_\_\_\_\_

NKA

Instructions/Assessment: Document your findings, inmate's responses/actions\_\_\_\_

Darvocet 1 PO BID for chronic knee & leg pain.

Ibuprophen 800mg. 1 PO BID for chronic pain

☒ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again_____
☒ Chronic Condition

☒ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 6/3/05   Seen by: C. Ayers LPN

Place original form in patient's medical record.



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 06/06/05     Pod/Location: A     Cell: _____     ID# _____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: My back kept spasming and I have a sharp pina

How long have you had this problem? 3 wks

Inmate's Signature: Robert M Davis          Date: 06-06-05

* * * * * * * * * *     * * * * * * * * * *     * * * * * * * * *     * * * * * * * * *     * * * * * * * * *     * * * * * * * * *     * * * * * * * * *

# TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:     Temp 96.6 Resp _____ Pulse 92 B/P _____

Instructions/Assessment: Document your findings, inmate's responses/actions _____

D/c Darvocet
Robaxin 750mg ĩ Po BID x 10 days

☒ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☒ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 6/7/05     Seen by: C. Lyons LPN

*Place original form in patient's medical record.*

*TC Doctor W C'mother*



**SOUTHERN HEALTH PARTNERS**

## INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 06/07/05    Pod/Location: A    Cell: _____ ID# _____

Inmate's Full Name: Robert Michael DAVIS

Complaint/Problem: My meds are not working anymore.
I am having severe pain in my right knee.
I am not getting enough rest, My back is also spasming.

How long have you had this problem? 2-3 weeks

Inmate's Signature: Robert M Davis    Date: 06-07-05

∗∗∗∗∗∗∗∗∗ ∗∗∗∗∗∗∗∗∗ ∗∗∗∗∗∗∗∗∗ ∗∗∗∗∗∗∗∗∗ ∗∗∗∗∗∗∗∗∗ ∗∗∗∗∗∗∗∗∗ ∗∗∗∗∗∗∗∗∗

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp 95.9  Resp 20  Pulse 100  B/P _____

Instructions/Assessment: Document your findings, Inmate's responses/actions _____

cont. Robaxin ÷ 00 BID X 10 days

_____

_____

_____

☒ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☒ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 6/8/05  Seen by: C. Lyons CRN

*Place original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correctional officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to be seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system at this facility.

Today's Date: 6/13/05    Pod/Location: A    Cell:_____    ID#_____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: I Am having more and more trouble getting around it hurts very bad when I put weight on my right leg the medicine is not having any affect except making me go to restroom Alot

How long have you had this problem? 1 Week

Inmate's Signature: Robert M Davis    Date: 06/13/05

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp 98    Resp 20    Pulse 95    B/P 110/99

Instructions/Assessment: Document your findings, inmate's responses/actions _____

See Above c/o pain currently on meds for this condition + has seen MD No other TX needed Refer Back to MD.

pt wants on crutches

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☑ Follow-Up Required?  If checked, date to be seen again _____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 6/13/05    Seen by: _____

*Place original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correct officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay syste this facility.

Today's Date: 06/20/05    Pod/Location: A    Cell: _____    ID# _____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: I was recommended to go to an ACL repair surgeon by the outside Doctor Dr. Anderson on 6-7-05 it's been almost 2wks and I still have not seen him. My leg is getting worse And the pain is very severe Also my medicine has Ran out I need some relief.

How long have you had this problem? _____

Inmate's Signature: Robert M Davis    Date: 06/21/05

∙∙∙∙∙∙∙∙∙∙∙∙ ∙∙∙∙∙∙∙∙∙∙∙∙ ∙∙∙∙∙∙∙∙∙∙∙∙ ∙∙∙∙∙∙∙∙∙∙∙∙ ∙∙∙∙∙∙∙∙∙∙∙∙

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp _____  Resp _____  Pulse _____  B/P _____

Instructions/Assessment: Document your findings, Inmate's responses/actions _____

Refer to Dr. for new since Ibuprophen not eff. for Paraqysia

(No Charge)

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 6/20/05    Seen by: P. Lujin, LPN

Place original form in patient's medical record.



**SOUTHERN HEALTH PARTNERS**

# INMATE SICK CALL SLIP – MEDICAL REQUEST

*TO BE COMPLETED BY INMATE:* Please complete the top half of the Sick Call Slip and return it to the correc officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay syste this facility.

Today's Date: 6-27-05   Pod/Location: A   Cell:_____ ID#_____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: I am still having problems with my leg. What's going on with my appt. with the surgen?

How long have you had this problem?_____

Inmate's Signature: _____   Date: 6-27-05

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:   Temp_____ Resp_____ Pulse_____ B/P_____

Instructions/Assessment: Document your findings, Inmate's responses/actions_____

Seen but no charge. Informed he has an appt scheduled for R knee, but the date cannot be given due to security reasons. Has PRN relaxtin per Dr. Merchasder.

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required?  If checked, date to be seen again_____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: 6/27/05   Seen by: C. Rgario RN

*Place original form in patient's medical record.*

**SOUTHERN HEALTH PARTNERS**

TO: DR. MC WHURTER

## INMATE SICK CALL SLIP – MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the corre
officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you
seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay sys:
this facility.

Today's Date: 07/06/05   Pod/Location: A   Cell: _____   ID# _____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: On the 6th of June I saw Doctor Anderson about my leg injury. He rec-
ommended me to see a surgeon to have it repaired. its been almost 1 month and I
still have Not had Anything done or seen Anyone. I feel that my Constitutional Rights
Are being violated in lack of treatment. I feel I have no Choice but to take legal action

How long have you had this problem? Almost 4 months

Inmate's Signature: Robert Michael Davis   Date: 07/06/05

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:   Temp_____   Resp_____   Pulse_____   B/P_____

Instructions/Assessment: Document your findings, Inmate's responses/actions _____

See Chart Notes

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again _____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical: _____   Seen by: _____

*Place original form in patient's medical record.*



**SOUTHERN HEALTH PARTNERS**

RE: Notification

# INMATE ~~REQUEST~~ — MEDICAL REQUEST

**TO BE COMPLETED BY INMATE:** Please complete the top half of the Sick Call Slip and return it to the correction officer and/or medical staff for submission and review by the medical staff. The medical staff will arrange for you to seen by the appropriate medical staff member. You will be charged in accordance with the medical co-pay system this facility.

Today's Date 8/22/05    Pod/Location: D    Cell:_____    ID#_____

Inmate's Full Name: Robert Michael Davis

Complaint/Problem: I Am Requesting Access to My Jail Medical Records per Court Order. IF this Order is not Granted ~~_____~~ in Good Faith I Have No choice but to take

How long have you had this problem? Further legal Action. Thank you

Inmate's Signature: Robert M Davis    Date: 8/22/05

Sworn before Me Patricia Swann on this 22 Day of August 2005

~~_____~~ my commission expires on _____

Patricia Swann Notary

## TO BE COMPLETED BY MEDICAL STAFF:

Note Patient's Vital Signs:    Temp_____    Resp_____    Pulse_____    B/P_____

Instructions/Assessment: Document your findings, inmate's responses/actions _____

_____ 8/22/05 _____

☐ Received Orders – thru Treatment Protocols; via telephone order; via verbal order
☐ Follow-Up Required? If checked, date to be seen again_____
☐ Chronic Condition
☐ Inmate to be charged through medical co-pay for this visit

Date Seen by Medical:_____    Seen by:_____

*Place original form in patient's medical record.*

# PROGRESS NOTES

| DATE | NOTES SHOULD BE SIGNED BY PHYSICIAN |
|------|-------------------------------------|
| 4/27 | NKA   DOB 1-8-68 — SSN. 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 |
|      | C/o ® Knee pain — Splint Knee — |
|      | X-Ray — Start Desyrel 150 mg |
|      | po Q AM — |
|      |  |
| 5/5/05 | Inmate returned ® knee support |
|      | to the nurse stating that it keeps |
|      | sliding down & that the support |
|      | does not help. Inmate asked to be |
|      | placed on Dr.'s list to see him about |
|      | the support. C. Jiggins LPN |

Doctor's Signature: _____

NAME—Last    First    Middle    Attending Physician    Record No.    Room/Bed
Davis, Robert M.         MCW

Form 65/2P   © BRIGGS, Des Moines, IA 50306 (800) 247-2343  www.BRIGGS.Corp.com
item                                              THEN FOLD IN TO

PROGRESS NOTES

NKA

| Date/Time | Inmate's Name: | D.O.B.: | S.S. #: |
|-----------|----------------|---------|---------|
| | Robert N. Davis | 1-8-68 | 9-25-54-3185 |
| 5/11/05 | Use all Bandage - Percugesic II tab po BID prn — | | |
| 5/18/05 | Knee still painful - MRI Ordered - MKartwell | | |
| 5/19/05 | Scheduled MRI ® knee z Andalusia Hosp. for May 23rd @ 8am. Will see if they can do him if his weight is not a problem. C. Lyons LPN | | |
| 5/19/05 | Andalusia MRI unable to do because inmate weighed too much & requires an open MRI. C. Lyons LPN | | |
| 5/19/05 | Appt. made = MRI of Andalusia located by Walmart for open MRI @ 1pm 5/23/05 (monday) phone 222-1151. C. Lyons LPN | | |
| 5/23 | ★ MRI rescheduled for 2pm 5/25/05 JCRN | | |
| 6/1/05 | Results from MRI returned — will refer to Dr Anderson — appt. on 6/7/05 at 9am JKartwell | | |

| Date/Time | Inmate's Name | D O B: | S.S #: |
|---|---|---|---|
| | Davis, Robert Michael | 1-8-68 | 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 |
| 6-7-05 | Taken to Dr. Anderson office @ 9:45pm today. No orders brought back. Called Dr. Andersons office & inmate requires to be sent to another Orthopedic Dr. for Ace repair, since Dr. Anderson does not do. Appt. being made by his office in order for inmate to see an ortho. in Enterprise who does Ace repair. C. Jignsiro | | |

Davis, Robert Michael 1-8-68. 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

6/8/05  Seen for nurse sick call & inmate
wanting more for pain, than just
Robaxin. Reladmitted inmate that
the Robaxin is all we have to give.
Inmate wanted to see the N.P. to
ask him. Inmate saw Dr. Maixnoster
& Dr. McWhorter, agreed that the
Robaxin is what he is to take.
Inmate states, "I use to play
foot ball & had surgery on one knee
& I have degenerative dis- & I know
that I will require surgery on this
knee". Inmate states "I have had
this type of pain + the other knee".
This nurse instructed inmate in front
of Dr. McWhorter, that pain meds. will
not rid of all the pain in the knee
& that he will cont. to have some pain
esp. being over-weight causes more
stress on the knee. Inmate states
"well can I have something for sleep?"
Instructed inmate that we do not
give meds. for sleep. Inmate asked
for a snack. Instructed inmate
that he is not a diabetic & with his
wt. he would not benefit in having
a snack due to his wt. now. C. Johnson

Davis, Robert Michael
6/15/05    Dr. McWhorter visited new order
for Purcogesic ÿ tabs PO BID x 10 days
V/O Dr. McWhorter / C. Lipona RN

8/2/05 seen by Dr. McWhorter. Order for
Robaxin 750mg. ÿ PO BID x 15 days & PRN
for ® knee pain. C. Lipona RN

7/6/05  S— Wants to know when
        the surgery scheduled.

        O— Knee exam - unchanged

        A—1) Knee Strain

        P—1) Restart Robaxin 750 mg
             at BID

           2) Trazadone 300 mg QD

# PROGRESS NOTES

| Last Name | First Name | Attending Physician | Room No | Hosp No |
|---|---|---|---|---|

| Date | Notes Should Be Signed by Physician |
|---|---|

7/3/05 S- *wants* to resume meds
for knee pain

O - Knee exam observed

A - *Term* *hy* *medial* knee

P- resume meds
① Robaxin 750 mg 1 tab
BIAX 10#
② Naproxen 800 mg 1 tab
BID
*illegible*
*illegible*
3 yrs

Pt refusing all meds *instead* *illegible*
8/05

## PROGRESS NOTES

Last Name: _Davis_ First Name: _Michael Robert_ Attending Physician: _Dr. McWhorter_ Patient No.: ___ Hosp. No.: ___

Date — Notes Should Be Signed by Physician

8/7/05

S — Inmate state that Ibuprofen is upsetting stomach.

O — PE deferred

A — 1) Knee injury

P 1) Change Ibuprofen to Percogen
1 tab BID
2) D/C Robaxin

98 — 104 — 16 —

Note seen 8/7/05

## PROGRESS NOTES

| Chart No. | | Last Name | First Name | Attending Physician | | Pat. No. | Hosp. No. |
|---|---|---|---|---|---|---|---|
| | Davis, Michael Robert | | | Dr. McMorick | | | |

| Date | Notes Should Be Signed by Physician |
|---|---|

8/17/05

S — Inmate states that Ibuprofen is upsetting stomach.

O — PE deferred

A — 1) Knee injury

P. 1) Change Ibuprofen to Percogen
1 tab BID
2) D/C Robaxin

98 - 104 - 16

noted bing 8/17/05

DAVIS ROBERT

8/29  Pt tF  TO  ANDAUSIA  REGIONAL FOR surg  on Knee/mitch

9/1  Pt Returned to Faicility  he has  a  large  wrap on his
Knee  and  walks with  a  walker  he will be  going
to  physical  therapy  3x wk.  Only  now  Dlc  med was
fr  Tylox  Q6h  as  needed  fw  pain — mitch

S — Had surgery in 8/29/05 of L (knee).

O — L knee surgical scar noted limitation of ROM

A① S/P arthroscop к surgery of L knee

P ① continue Lortab 7.5 # 28 tab Q4 GH PRN pain after he is out switch over to Percogesic ī tabs BID & Robaxin 750 mg ī tabs BID

② continue rehab as per orders of Dr. Holland

Note on BW
C. 9/1/5 —

Denis Patrid    Dr Menhotse
*(illegible printed text)*

9/1/05  9:30 pm  Pt refused to go to rehab. Obtym
4/13/05  Dr Holland  Holland called back to view
order for Mr. Davis per Dr Holland

*Advanced Magnetic Imaging, Inc.*

## Andalusia OPEN MRI

Phone: 877-868-1151
Fax: 866-694-1191

Date Faxed: Tuesday, May 31, 2005

2   Number of pages including cover sheet

RETURN CONFIRMATION REQUESTED PLEASE

**FAX TO:**   Covington County Jail

**NUMBER:**   334-428-2685

**ATTENTION:**  Judy

**RE:**  Robert Davis

**MESSAGE:**  Thank you!!!

**Signature: Patsy Stinson**

HIPPA COMPLIANT FAX

The Personal Health Information contained in the FAX is HIGHLY CONFIDENTIAL. It is intended for the exclusive use of the addressee. It is to be used only to aid in providing specific healthcare services to this patient. Any other use is a violation of FEDERAL LAW (HIPPA) and will be reported as such.

## SOUTHERN RADIOLOGY SERVICES, LLC

### R A D I O L O G Y   R E P O R T

NAME                    SEX   AGE
DAVIS ROBERT M           M
DOB:  1-8-68
DATE OF EXAM: 4-28-05
DICTATED: 4-29-05/1054 TRANSCRIBED: 4-29-05/1446/NRH
EXAM:  RT KNEE
PHYSICIAN: COVINGTON/MCWHORTER

CLINICAL HISTORY:  PAIN

AP AND LATERAL VIEWS OF RIGHT KNEE:  There is some irregularity adjacent to the inferior aspect of the patella which grossly appears to represent remote trauma, the edges being somewhat smooth.  There is a fragment of bone 1.5 cm in diameter within this area.  I have no prior studies now for comparison.  The knee joint appears relatively normal.  No other significant findings are seen.

T. L. EAKES, M.D.
ROENTGENOLOGIST

**SOUTHERN RADIOLOGY SERVICES, LLC**

AL/MS Office
120 Summit Parkway, #208
Birmingham, AL 35209
(205) 945-9969
(800) 845-8183
Fax: (800) 317-2757

La Office
3849 Plaza Tower Drive, #A
Baton Rouge, LA 70816
(504) 292-5543
(800) 843-9505
Fax: (888) 852-9729

Date Faxed: 4/29/05
Time Faxed: 10:45A
Technician: _____

1. Date: 4-28-05    2. Exam #: _____

3. Patient's Name: Robert M. Davis

4. Facility: Covington County Jail    Room #: _____

5. Facility's Fax #: 428-2640 / 428-2665

6. Type of Exam: (R) Knee

7. Reason for Exam: pain

8. Doctor's Name: Millard McWhorter

9. Doctor's Fax #: _____

10. Radiologist's Temporary Report:

marked chip fx patella
inferiorly, non united 1.5 cm

→ No new orders — use
knee brace as ordered JCPN

Talked to Dr MCW 5/2

Radiologist's Signature

# Andalusia OPEN MRI

A Division of Advanced Magnetic Imaging, Inc.

1522 East Three Notch Street ♦ Andalusia, AL 36420 ♦ Phone: 334-222-1151 ♦ Fax: 334-222-1191
Toll Free Phone: 877-898-1151 ♦ Toll Free Fax: 866-694-1191

Magnetic Resonance Imaging
Radiological Consultation Report

Patient:  Davis, Robert
DOB: 01/08/1968
Study Number: AOM11579
Study: MRI Right Knee
Date of Study:  May 25, 2005
Referred by:  Dr. McWorther

**History:**  Knee pain.

**Procedure:**  Long and short axis water- and fat-weighted sequences have been obtained of the right knee.

**Findings:**  No aggressive marrow signal abnormality is seen.  The anterior cruciate ligament appears completely torn.  The posterior cruciate ligament appears intact.  The collateral ligaments appear intact.  There is a moderate-sized joint effusion.

There appears to be a tear of the posterior horn of the medial meniscus with high signal extending to the superior and inferior articular surface laterally.  The patellae appears intact.  The lateral meniscus appears intact.

**Impression:**

1.      Anterior cruciate ligament tear with a joint effusion.
2.      Tear posterior horn of the medial meniscus.

Hunter Nelson, M.D.
Bernard A. Landry, M.D., F.A.C.R.
Date of Study: May 25, 2005
Transcribed on Thursday, May 26, 2005/mts
Verified by
Forwarded to Referring Physician

## ORTHOPAEDICS OF SOUTH ALABAMA
300 MEDICAL SUITE 1 - P.O. BOX 218 - ANDALUSIA, AL 36420
(334) 427-1022 - FAX (334) 427-1023
Landon B. Anderson, M.D.

**PATIENT NAME:**   **Robert Davis**
**DOS:**              **06/07/05**
**CHART #:**          **2241**

Mr. Davis is a 37 yo gentleman who states he fell out of the police van on 4/13, injuring his right knee. Twisted it and fell on it. Has been seeing Dr. McWhorter. He presently is taking Trazodone, Darvocet, Perocogesic, Ibuprofen and, I think, has been on Naprosyn but also a stomach medication. He says he has a lot of pain. This doesn't seem to be helping.

His past medical history is of note. He checks high blood pressure and asthma. He has also had left knee surgery. Had a ruptured patella back in '81.

He has had an MRI done May 25th which show a tear of the posterior horn of the medial meniscus and a tear of the anterior cruciate.

On exam, he is grossly obese. I can't tell if there is an effusion. He seems to have full flexion. Exquisite tenderness about the patella, medially and laterally. Most anterior medial discomfort. I can get no positive drawer on him. He has an Ace wrapped tightly around his knee and maybe some swelling distally. Suggested he not use that. I think this patient might be appropriately treated with PT and anti-inflammatories at this juncture, however, he says he has a law suit pending and he want this fixed. I told him I did not do cruciate reconstructions. See if we can get him an appointment with someone who does.

At the present time, he is incarcerated. I don't know any of the details of that. He is accompanied by a police officer.

Therefore, I didn't really alter his treatment at the present time other than suggest he stop wrapping it with the Ace bandage. I did not give him a followup appointment.

cc: Millard McWhorter, M.D.


                    Landon B. Anderson, M.D.


T:    06/07/05-ms

**COVINGTON BONE & JOINT, P.C.**
GILBERT R. HOLLAND, M.D
ORTHOPAEDIC SURGERY
848 S. Three Notch Street
P.O. Box 820 · Andalusia, AL 36420 · (334) 427-3034
By Appointment

NAME _____

ADDRESS _____

℞ _____

_____ M.D

_____ M.D

Product Selection
Permitted _____

Dispense as Written _____

DATE 9-9-05

REFILL _____ TIMES

BH 1672701
10400

---

**COVINGTON BONE & JOINT, P.C.**
GILBERT R. HOLLAND, M.D
ORTHOPAEDIC SURGERY
848 S. Three Notch Street
P.O. Box 820 · Andalusia, AL 36420 · (334) 427-3034
By Appointment

NAME _____

ADDRESS _____

℞ _____

_____ M.D

_____ M.D

Product Selection
Permitted _____

Dispense as Written _____

DATE _____

REFILL _____ TIMES

BH 1672701
10400

---

**COVINGTON BONE & JOINT, P.C.**
GILBERT R. HOLLAND, M.D
ORTHOPAEDIC SURGERY
848 South Three Notch St · Andalusia, AL · (334) 427-3034

DAY _____ DATE _____

HOUR _____

IF UNABLE TO KEEP THIS APPOINTMENT & NEXT YOU CALL THE OFFICE
SO THE TIME RESERVED FOR YOU MAY BE UTILIZED

# ANDALUSIA REHABILITATION AND SPORTS MEDICINE

**Tools RG**
*Know how to show how*

*Rbed, Dews*
*222-6982*

### HOME EXERCISE PROGRAM
### Knee exercises

*Perform 1-2 times per dy*

---

1. Lie flat on back
2. Slide _R_ heel toward your buttocks, bending the knee
3. Hold _5_ seconds and slowly lower
4. _30_ repetitions, _1-2_ times per day

*use a sheet to give extra stretch 5 min.*

© The Saunders Group Inc.

---

1. Lie on your back with _1-2_ inch roll under _R_ knee
2. Place _____ lb weight on foot as shown
3. Raise heel off floor until knee is straight
4. Hold _5_ seconds and slowly lower
5. _30_ repetitions, _1_ times per day

© The Saunders Group Inc.

---

1. Sit on edge of table or bed
2. Place _0_ lb weight around _____ foot
3. Straighten knee fully _45 degrees_
4. Hold _3_ seconds and slowly lower
5. _30_ repetitions, _1-2_ times per day

© The Saunders Group Inc.

---

1. Stand holding onto solid object as shown
2. Place _~_ lb weight on _~_ ankle
3. Slowly bend knee
4. Hold _3_ seconds and slowly lower
5. _30_ repetitions, _1-2_ times per day

© The Saunders Group Inc.



1. Sit or lie on your back with leg straight
2. Place a small towel rolled under your _____ knee
3. Press the back of your knee downward
4. This will tighten the muscle on the top of your thigh and move your kneecap as shown
5. Hold _____ seconds
6. _____ repetitions, _____ times per day

© The Saunders Group Inc.



1. Arrange tubing around _____ leg as shown
2. Begin with knee bent partway (about 1/3), then slowly straighten knee
3. Slowly bend knee again
4. ___ repetitions, ___ times per day

© The Saunders Group Inc.



1. Lie on back with _R_ knee straight and the other knee bent as shown
2. Place a __⚊__ lb weight around your ankle
3. Keep the leg completely straight, then raise it to the level of the bent knee.
4. Hold _3-5_ seconds and slowly lower
5. _30_ repetitions, _1·2_ times per day

*Doing 10-15 c̄ assistance now- Work toward*
*30 c̄ No help*

© The Saunders Group Inc.



1. Sit in a chair with knees bent as shown
2. Place _____ lb cuff weight around _____ ankle
3. Bend _____ hip to lift foot off floor
4. Hold _____ seconds, slowly relax
5. _____ repetitions, _____ times per day

© The Saunders Group Inc.



1. Sit with _R_ leg straight on bench as shown
2. Lean forward, keeping the back straight, so that a stretch is felt
3. Hold _30_ seconds
4. _5_ repetitions, _1-2_ times per day

© The Saunders Group Inc.

1. Place _____ lb cuff weight around _____ ankle
2. Lie on side as shown, with _____ leg on bottom
3. Raise leg up toward ceiling
4. Hold _____ seconds, slowly relax
5. _____ repetitions, _____ times per day

© The Saunders Group Inc.

1. Place _____ lb cuff weight around _____ ankle
2. Lie on side with _____ leg on top
3. Bend lower leg slightly
4. Raise top leg straight up, without letting it come forward
5. Hold _____ seconds, slowly relax
6. _____ repetitions, _____ times per day

© The Saunders Group Inc.

1. Stand, holding on to the back of a chair for support with feet shoulder width apart
2. Squat slowly, bending your knee(s) so that you feel a stretch
3. Keep feet flat on the floor
4. Hold _____ seconds
5. _____ repetitions, _____ times per day

© The Saunders Group Inc.



**SOUTHERN HEALTH PARTNERS**

# AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION TO CORRECTIONAL FACILITY

To: _Covington Co Jail_

I hereby authorize any hospital, clinic, physician's office, and/or health agency to provide any information they may have acquired while attending me for a medical, dental, or psychiatric problem to Southern Health Partners, Inc. who is the medical care provider of this Correctional Facility. Such information may include the following items:

Summary of positive findings, most recent history, physical exam including any diagnostic tests; Medical/dental/psychiatric/psychological diagnosis and treatment regimen when last treated; Hospital discharge summary for any/all hospitalization(s); Laboratory and/or Special Study Reports; Any other medical/dental/psychiatric services I may have previously had, currently seeking, or future treatment plans; Other Records: _All without_

I understand my records are protected under state and/or federal privacy laws and cannot be disclosed to any other outside party without my written consent unless otherwise provided for by state or federal law. Records received will be kept within the patient's medical file within the correctional medical unit and be used in the on-going provision of health care services.

I release responsibility and/or liability from the correctional facility for the release of the above requested medical file information to the medical unit to the extent indicated and authorized.

Please send requested documents to the following address:
ATTN: MEDICAL UNIT/SOUTHERN HEALTH PARTNERS
County Name: _Winston_ COUNTY JAIL
Street Address: _____
City/State/Zip: _____ Fax: _____

Patient Name: _Davis, Robert Michael_  Birth Date: _1-8-68_
Social Security Number: _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_  Dates of Service(s): _All Records_
Inmate's Signature: _Robert Michael Davis_  Date: _8-22-05_
Witness: _____  Date: _8/22/05_

Final Privacy Rule (page 82540, HIPAA) states while individuals are in a correctional facility or in the lawful custody of a law enforcement official, covered entities (i.e. jail medical units) can use, request or disclose protected health information about these individuals without authorization to the correctional facility having custody as necessary for: the provision of health care to such individuals; for the health and safety of such individuals and other inmates; and the health and safety of the officers of employees of or other as the correctional institution. Covered entities are allowed to disclose protected health information about these individuals if the correctional institution represents that the protected health information is necessary for these purposes.

_Per Court order Mr Davis Robert Michael
Given a copy of Medical Records_



SOUTHERN
HEALTH
PARTNERS

# AUTHORIZATION FOR RELEASE OF MEDICAL INFORMATION TO CORRECTIONAL FACILITY

To: _DR. Anderson        427-1022_

I hereby authorize any hospital, clinic, physician's office, and/or health agency to provide any information they may have acquired while attending me for a medical, dental, or psychiatric problem to Southern Health Partners, Inc. who is the medical care provider of this Correctional Facility.  Such information may include the following items:

> Summary of positive findings, most recent history, physical exam including any diagnostic tests;
> Medical/dental/psychiatric/psychological diagnosis and treatment regimen when last treated;
> Hospital discharge summary for any/all hospitalization(s);  Laboratory and/or Special Study Reports;
> Any other medical/dental/psychiatric services I may have previously had, currently seeking, or
> future treatment plans; Other Records: _Need all info regarding his_
> _injury. and to see if this to an old or new injury_

I understand my records are protected under state and/or federal privacy laws and cannot be disclosed to any other outside party without my written consent unless otherwise provided for by state or federal law.  Records received will be kept within the patient's medical file within the correctional medical unit and be used in the on-going provision of health care services.

I release responsibility and/or liability from the correctional facility for the release of the above requested medical file information to the medical unit to the extent indicated and authorized.

Please send requested documents                ATTN: MEDICAL UNIT/SOUTHERN HEALTH PARTNERS
to the following address:        County Name: _____COUNTY JAIL_____
                                 Street Address: _200 Hillcrest Dr._
                                 City/State/Zip: _Andalusia, Al_  Fax: _428-2665_
Patient Name: _Robert Michael Davis_  _36420_        Birth Date: _1-8-68_
Social Security Number: _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_ Dates of Service(s): _____
Inmate's Signature: _Robert M Davis_                Date: _6-8-05_
Witness: _DeWayne Ham_                            Date: _6-8-05_

Final Privacy Rule (page 82540, HIPAA) states while individuals are in a correctional facility or in the lawful custody of a law enforcement official, covered entities (i.e. jail medical units) can use, request or disclose protected health information about these individuals without authorization to the correctional facility having custody as necessary for:  the provision of health care to such individuals; for the health and safety of such individuals and other inmates; and the health and safety of the officers of employees of or other as the correctional institution.  Covered entities are allowed to disclose protected health information about these individuals if the correctional institution represents that the protected health information is necessary for these purposes.

**COVINGTON COUNTY JAIL**
**INAMTE REQUEST/GRIEVANCE FORM**

NAME. Robert Michael Davis    BLOCK: A    DATE: 6-27-05

( ) TELEPHONE CALL    ( ) CUSTODY CHANGE    ( ) PERSONAL PROBLEM

( ) SPECIAL VISIT    ( ) TIME SHEET    ( ) OTHER    ✓ GRIEVANCE

BRIEFLY OUTLINE YOUR REQUEST/ GRIEVANCE, THEN PRESENT TO C/O :

IF REQUEST PLEASE CHECK TO WHOM IT IS DIRECTED TO : Dorena
(✓ SHERIFF ( )CHIEF JAILER ( )JAILER ( )RECORDS OFFICE ( )CHAPLIAN

IF GRIEVANCE  STATE PARITES INVOLVED AND NAMES OF WITNESSES IF APPLICABLE.

I have been reccomended to go And see A ACL surgeon to have
my leg repaired by Dr. Anderson who the CCJ doctor Dr. McWhorter
had me go see I was told at my last CCJ Dr. visit on 6/22/05
that I would be soon seen, my leg is getting worse and
it is becoming increasingly harder for me to get Around or
stand on my leg for Any length of time including when I take
showers it is very painful I would like to have
someone call Doctor Anderson ASAP and let me speak to
him regarding why it has taken so long me to have
my leg repaired and even to see this other ACL specialist.
This is my 2nd grievance on this matter of seeing Another
doctor or just getting some help period. I Feel I Am being
mis treated And my rights Are being vidated. I Feel that
IF I dont hAve A Response this week I will have
no choice but start legal action against the parties involved
Thank You For your prompt Attention to this matter
                                                    Robert M Davis

DO NOT WRITE BELOW THIS LINE — FOR REPLY ONLY:

( ) APPROVED  ( ) DENIED  ( ) PAY PHONE  ( ) COLLECT  ( ) OTHER

your request is being sent to Medical Dept

                    7-5-05 Dorene

You already have an appt. to see
Dr. Anderson & you need to address
these issues with him or with
Dr. Holland. We have done all we
can.                    7-5-05

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Zantac 150mg PO BID | Am / PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Zyprexa 15mg PO q Am | Am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Haldol 1mg q Am | Am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Benztropine 1mg q Am | Am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Desyrel 150mg PO q pm | pm | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Prevacid 30mg PO q Am until gone | Am | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Naproxen 500mg PO BID PRN | Am / PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Albuterol Inhaler | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Zantac 150 PO BID | Am / PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

CHARTING FOR  4-16-05   THROUGH  4-30-05

Physician
Physician
Allergies

Telephone No.
Alt Telephone
Rehabilitative Potential

Medical Record No.

Diagnosis
Medicaid Number | Medicare Number | Approved By Doctor

RESIDENT  Davis, Michael Robert

## MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Naproxen 500mg PO PRN BID | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Zantac 150 PO BID | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| | PM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Deseryl 150mg PO QAM | AM | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Albuterol Inhaler | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |

STARTING FOR: 4/28    THROUGH: 4/30/05

Physician: new

Physician:

Allergies: NKA

Diagnosis:

Medicaid Number:

Medicare Number: 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

Approved By Doctor: By:    Title:    Date:

RESIDENT: Deas, Robert M    DOB: 1-8-68   Sex: M   Room: A Block   Admission Date:

REORDER FROM INTEGRAL SOLUTIONS GROUP • 1-800-235-0767    FORM A-55    STOCK #50-6423

# MEDICATION ADMINISTRATION RECORD

| MEDICATIONS | HOUR |
|---|---|
| Naproxen 500mg PO PRN BID | AM / PM |
| Zantac 150mg PO BID | AM / PM |
| Desyrel 150mg PO qAM | AM |
| albuterol inhaler PRN | PRN |
| Percocet II tabs PO BID PRN | AM / PM |

STARTING FOR 5-1-05 THROUGH 5-31-05

Physician: xxx Winkler

Allergies: NKA

Medicare Number: 225-54-385

RESIDENT: Davis, Robert ML  DOB 1-8-68  Sex M  Room A

(column markers 1–31 across top and bottom)

REORDER FROM INTEGRAL SOLUTIONS GROUP 1-800-235-0767  FORM A-55  STOCK #50623