IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT MICHAEL DAVIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. 2:05-CV-429-MEF |
| | ) |
| ANTHONY CLARK, et al., | ) |
| | ) |
| Defendants, | ) |

## DEFENDANTS' SUPPLEMENTAL SPECIAL REPORT

Defendants, Millard H. McWhorter, M.D. and Judy Carter (incorrectly designated as Judy Lambert in the complaint) submit the following Supplemental Special Report in compliance with the Court's August 27, 2007 Order. Defendants offer the supplemental affidavits of Dr. McWhorter (Ex. A) and Nurse Carter (Ex. B) in support of this submission.

### I.   FACTS

On August 27, 2007, Magistrate Judge Susan Russ Walker ordered that the jail and medical defendants file a supplemental special report addressing the plaintiff's allegation that said defendants failed to provide him with a special diet to address his alleged need for additional food. (Order). The two medical defendants in this case are Nurse Carter and Dr. McWhorter. (See Complaint).

The plaintiff's medical chart from April 9, 2005 thru September 16, 2005 contains only two references to complaints to the medical staff related to food. The first reference is contained in an April 17, 2005 sick call slip, wherein the plaintiff complained that he was not getting enough food and was having headaches. His other complaints in this sick call slip included the need for an inhaler for asthma, that he was having trouble sleeping and that he had underwent recent knee

surgery and needed pain medication. In response to this sick call slip, the plaintiff was seen by Nurse Carter, who assessed the plaintiff with a history of asthma, but that he was not having any trouble during her visit. Nurse Carter contacted Dr. McWhorter and, pursuant to his verbal order, the plaintiff was prescribed Albuterol as needed for his asthmatic complaints and Naproxen as needed for his pain. There was no mention in Nurse Carter's visit with the plaintiff of any problems with inadequate portions of food. Moreover, in Dr. McWhorter's first visit with the plaintiff, on April 27, 2005, the plaintiff had no complaints related to not getting enough food. (McWhorter Supp. Aff. at ¶ 4; Carter Supp. Aff. at ¶ 5.)

The second and last reference with regard to food in the medical chart is contained in a June 8, 2005 note made by Connie Lyons, LPN wherein Nurse Lyons noted that the plaintiff was requesting a snack, among several other items. Nurse Lyons stated that the plaintiff was not a diabetic patient and, therefore, would not benefit from the administration of a snack. (McWhorter Supp. Aff. at ¶ 5.)

As a registered nurse, Nurse Carter is not qualified to prescribe a diet for a patient nor does she have any expertise in determining when a patient has a medical need for additional nutrition. During her employment at the jail, Dr. McWhorter prescribed treatment for patients that he determined had dietary needs, and Dr. McWhorter did not prescribe a special diet for the plaintiff nor did he ever find that the plaintiff had a medical need for a special diet. (Carter Supp. Aff. at ¶6; McWhorter Supp. Aff. at ¶ 6.)

Based upon Dr. McWhorter's personal knowledge of the plaintiff's medical condition and regular treatment of the plaintiff from April 2005 thru September 16, 2005, it is Dr. McWhorter's medical opinion that the plaintiff had no medical need for any type of special diet that would have

included increased portions and complained of no medical conditions which would be related to lack of nutrition or food. As such, based upon Dr. McWhorter's medical judgment, Dr. McWhorter did not prescribe the plaintiff a diet that called for increased portions. (McWhorter Supp. Aff. at ¶ 6.)

Both Dr. McWhorter and Nurse Carter have testified that they met the standard of care in all of their treatment of the plaintiff and that they were not deliberately indifferent to any of the plaintiff's medical needs. (McWhorter Supp. Aff. at ¶ 6; Carter Supp. Aff. at ¶ 7.)

Pursuant to Southern Health Partners, Inc.'s ("SHP") contract with the Covington County Commission, neither Dr. McWhorter nor any of the medical staff had any responsibility for providing or administering food to inmates. Food was administered to inmates by the jail staff. (McWhorter Supp. Aff. at ¶ 3.)

## II.    MEDICAL DEFENDANTS' RESPONSE

### A.    Because the plaintiff has failed to allege something more than a "de minimus" physical injury, his claim is barred by the PLRA.

Under the PLRA, 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while under custody without a prior showing of physical injury." The Eleventh Circuit has held that, "[i]n order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimus." *Mitchell v. Brown and Williamson Tobacco Corporation,* 294 F.3d 1309, 1312-1313 (11th Cir. 2002). In *Shabazz v. Barnausks,* 790 F. 2d 1536, 1538 (11th Cir. 1986), the 11th Circuit dismissed the plaintiff's Eighth Amendment cruel and unusual punishment claim, because the allegation of a forced shave was de minimus, even though the shaving caused "bleeding, inflammation, irritation,

3

ingrowing of hairs, infection, purulence and pain." *See also Siglar v. Hightower,* 112 F.3d 191, 194 (5th Cir. 1997) (finding that a bruised ear which lasted three days was not sufficient to support recovery under 1997e(e)); *Benson v. Carlton,* No. 99-6433, 2000 U.S. App. LEXIS 21202, at *2 (6th Cir. Aug. 9, 2000) (holding that a "whirling sensation" and missing meals did not constitute a more than *de minimis* physical injury). *Zehner v. Trigg,* 133 F.3d 459 (7th Cir. 1997) (affirmed dismissal of Eighth Amendment claim for exposure to asbestos because plaintiff failed to show any physical injury); *Allen v. Chapman,* 1999 U.S. Dist. LEXIS 6686, *6 (S. D. Ala. March 10, 1999), <u>adopted with modification on other grounds</u>, 1999 U.S. Dist. Lexis 6750 (April 27, 1999)(failure to protect claim dismissed under § 1997e(e) because no allegation of physical injury; allegation that "life was endangered and that he was almost killed" was insufficient); *Luong v. Hatt,* 979 F. Supp. 481 (N.D. Tex. 1997)(dismissing claim for failure to protect where only evidence of injury was cuts and bruises lasting no longer than two or three days which were *de minimis* and did not meet physical injury requirement); *Davis v. Dist. of Columbia,* 158 F.3d 1342 (D.C. 1998) (allegation of insomnia, appetite loss and weight loss as consequence of emotional trauma insufficient to meet § 1997e(e) physical injury requirement).

In the case at bar, the plaintiff has failed to allege any physical injury arising out of not receiving additional portions of food. Indeed, the only reference in the chart to any physical condition related to food is his complaint in his April 17, 2005 sick call of not getting enough food and having headaches. Clearly, based upon the case law set out above, one complaint of headaches related to portions of food would not constitute a "physical injury" that is greater than "de minimus." As such, the plaintiff's claims should be barred under the PLRA.

4

> B. **The plaintiff's claims against Dr. McWhorter and Nurse Carter are due to be dismissed, because the plaintiff has presented no evidence that said defendants were deliberately indifferent to a serious medical condition.**
>
>> 1. **The plaintiff's claim that he needed additional food is not a "serious medical need."**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, the plaintiff must demonstrate that Dr. McWhorter and Nurse Carter were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Kelley v. Hicks*, 400 F. 3d 1282, 1284 n. 3 (11th Cir. 2005).

In the case at bar, the plaintiff's allegation that he needed additional food is clearly not a "serious medical need" under the standard set out in *Kelly*. This "condition" has not been diagnosed by a physician as mandating treatment nor is it one where a layperson would easily recognize the need for medical attention. Indeed, Dr. McWhorter has testified that the plaintiff did not have a medical need for additional food. (McWhorter Supp. Aff. at ¶ 6.)

>> 2. **Medical Defendants were not deliberately indifferent.**

Where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. *Hamm v. DeKalb County*, 774 F.2d 1567 (11th Cir. 1985). Indeed, in *Estelle v. Gamble*, 429 U.S. 97, 106 (1976), the United States Supreme Court held that medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Thus, the inadvertent or negligent failure to provide adequate

5

medical care "cannot be said to constitute an unnecessary and wanton infliction of pain." (*Id.* at 105-06.) Instead, it must be shown that there was a "deliberate indifference" to the serious medical needs of a prisoner. (*Id.* at 104.)

In addition, an inmate does not have a right to a ***specific*** kind of medical treatment. *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; ***how [a municipality] obtains such treatment is not a federal constitutional question***") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the plaintiff. See *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although the plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments.") *Bismarck v. Lang,* 206 WL1119189 (M.D. Fla. 2006) ("Whether a defendant should have used additional or different diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment and therefore not an appropriate basis for liability under the Eighth Amendment.'") quoting *Adams v. Poag,* 61 F.3d 1537, 1545 (11th Cir. 1995).

In this case, there is absolutely no evidence from which a jury could find that Dr. McWhorter and Nurse Carter acted with deliberate indifference to any complaints by the plaintiff for additional

6

food. First, the medical chart contains only two references to requests by the plaintiff for additional food in five months of treatment, only one of which was set out in a sick call slip. Second, it was Dr McWhorter's medical opinion that the plaintiff had no medical need for a diet that included increased portions of food. (McWhorter Supp. Aff. at ¶ 6.) As the plaintiff has offered no medical testimony contradicting Dr. McWhorter's judgment, the defendants are entitled to summary judgment as a matter of law.

### III. CONCLUSION

For the above-stated reasons, the medical defendants request that this Court treat their original special report and this supplemental special report as a motion for summary judgment and enter an order granting same.

_____
Daniel F. Beasley
Robert N. Bailey, II
Attorneys for Defendant, Southern Health Partners, Inc.

LANIER FORD SHAVER & PAYNE P.C.
200 West Side Square, Suite 5000
P.O. Box 2087
Huntsville, Alabama 35804
(256) 535-1100

## CERTIFICATE OF SERVICE

I hereby certify that on this the ___10___ day of September, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Scott W. Gosnell, Esq.
Webb and Eley
P.O. Box 240909
Montgomery, AL 36124-0909

and I hereby certify that I have mailed by United States Mail, postage prepaid, the document to the following non-CM/ECF participant:

Robert Michael Davis
500 Hardin Street
Opp, Alabama 36467

_____
Of Counsel

# EXHIBIT A

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT MICHAEL DAVIS,            )
                                 )
         Plaintiff,              )
                                 )
vs.                              )   CASE NO. 2:05-CV-429-MEF
                                 )
ANTHONY CLARK, et al.,           )
                                 )
         Defendants,             )

**SUPPLEMENTAL AFFIDAVIT OF MILLARD H. MCWHORTER, M.D.**

Before me, the undersigned authority, personally appeared Millard H. McWhorter and, after being duly sworn, deposed and said as follow:

1. My name is Millard H. McWhorter, M.D. I am over the age of 19 years and have personal knowledge of all matters set out herein. I reaffirm all of my testimony set out in paragraphs 1 thru 37 of my original affidavit in this case.

2. It is my understanding that the Court has ordered that I respond to the plaintiff's allegation that I failed to provide him with a special diet to address his alleged need for additional food.

3. Pursuant to Southern Health Partners, Inc.'s ("SHP") contract with the Covington County Commission, neither I nor the medical staff had any responsibility for providing or administering food to inmates. Food is administered to inmates by the jail staff.

4. In the plaintiff's medical chart from April 9, 2005 thru September 16, 2005, there are

two references to complaints to the medical staff related to food. The first reference is contained in an April 17, 2005 sick call slip, wherein the plaintiff complained that he was not getting enough food and was having headaches. His other complaints in this sick call slip included the need for an inhaler for asthma, that he was having trouble sleeping and that he had underwent recent knee surgery and needed pain medication. In response to this sick call slip, the plaintiff was seen by Judy Carter, who assessed the plaintiff with a history of asthma, but that he was not having any trouble during her visit. Judy Carter contacted me and, pursuant to my verbal order, the plaintiff was prescribed Albuterol as needed for his asthmatic complaints and Naproxen as needed for his pain. To my knowledge, there was no mention in Ms. Carter's visit with the plaintiff of any problems with inadequate portions of food. Moreover, in my first visit with the plaintiff, on April 27, 2005, the plaintiff had no complaints related to not getting enough food. He complained only of right knee pain.

5.   The second and last reference with regard to food in the medical chart is contained in a June 8, 2005 note made by Connie Lyons, LPN wherein Nurse Lyons noted that the plaintiff was requesting a snack, among several other items. Nurse Lyons stated that the plaintiff was not a diabetic patient and, therefore, would not benefit from the administration of a snack.

6.   Based upon my personal knowledge of the plaintiff's medical condition and regular treatment of the plaintiff from April 2005 thru September 16, 2005, it is my medical opinion that the plaintiff had no medical need for any type of special diet that would have included increased portions and complained of no medical conditions which would be related to lack of nutrition or food. As such, based upon my medical judgment, I did not prescribe him a diet that called for increased portions. It is my opinion that I met the standard of care in all of my treatment of the plaintiff and that I was not deliberately indifferent to any of the plaintiff's medical needs.

_Millard H. McWhorter, M.D._
———————————————
Millard H. McWhorter, M.D.

STATE OF ALABAMA      )
COUNTY OF Covington )

I, the undersigned Notary Public in and for said county in said state, hereby certify that Millard H. McWhorter, M.D., whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, he executed the same voluntarily on the day the same bears date.

GIVEN UNDER MY HAND and official seal on this the _10_ day of _September_, 2007.

_Robert W. Bailey_
———————————————
Notary Public
My commission expires: _12-3-2007_

# EXHIBIT B

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

ROBERT MICHAEL DAVIS,            )
                                 )
          Plaintiff,             )
                                 )
vs.                              )   CASE NO. 2:05-CV-429-MEF
                                 )
ANTHONY CLARK, et al.,           )
                                 )
          Defendants,            )

**SUPPLEMENTAL AFFIDAVIT OF JUDY CARTER**

Before me, the undersigned authority, personally appeared Judy Carter and, after being duly sworn, deposed and said as follow:

1. My name is Judy Carter. I am over the age of 19 years and have personal knowledge of all matters set out herein.

2. I reaffirm all of my testimony set out in paragraphs 1 thru 22 of my original affidavit in this case.

3. It is my understanding that the Court has ordered that I respond to the plaintiff's allegation that I failed to provide him with a special diet to address his alleged need for additional food.

4. During my employment by Southern Health Partners, Inc. ("SHP") at the Covington County Jail, I would have provided care to the plaintiff from April 9, 2005 through June 4, 2005. During this time frame, there is only one reference in the plaintiff's chart to him wanting more food.

5. On April 17, 2005, the plaintiff completed a sick call slip, wherein he complained that he was not getting enough food and was having headaches. His other complaints in this sick call slip included the need for an inhaler for asthma, that he was having trouble sleeping and that he had underwent recent knee surgery and needed pain medication. I responded to the plaintiff's sick call slip, and the plaintiff did not mention to me any complaints that he had with inadequate portions of food. In response to the plaintiff's complaints, I spoke with Dr. McWhorter who verbally prescribed Albuterol as needed for the plaintiff's asthmatic complaints and Naproxen for the plaintiff's complaints of pain. During my employment, the plaintiff never again completed a sick call slip or complained in my presence of needing additional food.

6. As a registered nurse, I am not qualified to prescribe a diet for a patient nor do I have any expertise in determining when a patient has a medical need for additional nutrition. During my employment at the jail, Dr. McWhorter prescribed treatment for patients that he determined had dietary needs, and Dr. McWhorter did not prescribe a special diet for the plaintiff nor did he ever find that the plaintiff had a medical need for a special diet.

7. All necessary care provided to the plaintiff by me was appropriate, timely and within the standard of care. On no occasion was the plaintiff ever at risk of serious harm, nor was I ever indifferent to any complaint that he made.

_____
Judy Carter


STATE OF ALABAMA )
)
COUNTY OF Covington )


    I, the undersigned Notary Public in and for said county in said state, hereby certify that Judy Carter, whose name is signed to the foregoing and who is known to me, acknowledged before me that, being fully informed of the contents of said instrument, she executed the same voluntarily on ~~the day the same bears date.~~ September 10, 2007.

_____
Notary Public
My commission expires: 12-3-2007